

FILED

MAR 1 0 2014

CLERK, U.S. DISTRICT COURT
NORFOLK, VA

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

WAYNE D. BUTTS,

      Petitioner,

    v.                        Civil Case No.: 2:12-cv-42

HAROLD W. CLARKE, Director,
Virginia Department of
Corrections,

      Respondent.

## FINAL ORDER

    This matter is before the Court on Petitioner Wayne D. Butts' ("Petitioner") Petition for a Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2254. Petitioner alleges violations of his due process rights pertaining to an institutional conviction he received during incarceration for fighting with another inmate.

    The matter was referred to a United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and (C), Rule 72(b) of the Federal Rules of Civil Procedure, and Rule 72 of the Rules of the United States District Court for the Eastern District of Virginia for report and recommendation. The report of the Magistrate Judge was filed on February 27, 2013,

recommending dismissal of the petition.  By copy of the report, each party was advised of his right to file written objections to the findings and recommendations made by the Magistrate Judge.  On March 18, 2013, the Court received Petitioner's Objections to the Magistrate Judge's Report and Recommendation. ECF No. 40.  Petitioner appeared, with counsel, for an evidentiary hearing before the Court on October 22, 2013.  After conducting a de novo review of the portions of the Magistrate Judge's Report and Recommendation to which Petitioner objects, pursuant to 28 U.S.C. 636(b)(1)(C), the Court **GRANTS** Petitioner's petition.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 3, 2011, while incarcerated at the Deep Meadow Correctional Center, Petitioner reported to Sergeant C.L. Moore that he had engaged in a physical altercation with another inmate on the previous evening.  Petitioner told Sergeant Moore that the other inmate "kept coming in my cut and messing with me, I got tired of it and punched him in the face." Disciplinary Offense Report at 1, ECF No. 1-4.  Petitioner was cited for violating Virginia Department of Corrections ("VDOC") Operating Procedure § 861.1(V)(B)(218), which prohibits "[f]ighting with any person."  VDOC Operating Procedure at 13, ECF No. 19-3.  The next day, a Disciplinary Offense Report was

2

served on Petitioner.   The Serving Officer read the Disciplinary
Offense Report to Petitioner, who had been placed in handcuffs,
and recorded Petitioner's answers to the questions listed on the
Report.   The first three questions on the report appeared as
follows:

| | |
|---|---|
| 1. DO YOU REQUEST A STAFF OR OFFENDER ADVISOR TO ASSIST YOU AT THE HEARING?  Advisor Name: _____ | ☐Yes ☐No ☐ Refused to Respond |
| 2. DO YOU WISH TO REQUEST WITNESSES?  ☐ Request the services of an advisor? ☐Advisor provided | ☐Yes ☐No ☐ Refused to Respond |
| 3. DO YOU WISH TO REQUEST DOCUMENTARY EVIDENCE?  ☐ Request the services of an advisor? ☐Advisor provided | ☐Yes ☐No ☐ Refused to Respond |

Disciplinary Offense Report at 1, ECF No. 1-4.   The Serving
Officer checked "Yes" for all three questions, indicating that
Petitioner "request[ed] a staff or offender advisor to assist
[him] at the hearing," that he "wish[ed] to request witnesses,"
and that he "wish[ed] to request documentary evidence."   Id.
The Serving Officer did not check any of the boxes under
questions two and three, indicating whether Petitioner requested
an advisor and whether an advisor was provided.   Id.   After the
Serving Officer read the rest of the Disciplinary Offense Report
to Petitioner and recorded Petitioner's responses to the
remaining questions, Petitioner signed the report, affirming
that he had "been informed of the charges against [him], and
advised of [his] rights at the Disciplinary Hearing," which was
scheduled for March 11, 2011.   Id.   The Serving Officer also

3

signed the report, affirming that Petitioner was "provided copy of report" on March 4, 2011 at 2:00 p.m.  Id.  Petitioner was then taken to a segregation cell at nearby Powhatan Correctional Center ("Powhatan"), where he remained until his disciplinary hearing on March 9, 2011.[1]  Petitioner was not assigned an advisor either before or at his disciplinary hearing.

Inmate Hearing Officer Blackwell presided over Petitioner's disciplinary hearing, where the following exchange occurred:

**Blackwell:** I indicate on the report that you do not wish to have an advisor, right?

**Petitioner:** Yes sir, that's correct.

**Blackwell:** I indicate on the report that you do not wish to have any witnesses, right?

**Petitioner:** I really don't think I have any.  I got --

**Blackwell:** -- Well, you didn't, you didn't list no name to me, so it's too late at this time.

**Petitioner:** Ok.

**Blackwell:** You had to present names to me.

**Petitioner:** I don't know anybody's name.

**Blackwell:** You didn't -- you did not request any documentary evidence, right?

**Petitioner:** Yeah, the uh . . . I requested the video.  The video.

---

[1] It is not clear from the record why Petitioner's disciplinary hearing occurred on March 9, 2011, instead of the originally scheduled date of March 11, 2011.

> **Blackwell**: You have to send a form to me, you didn't send no form to me.
>
> **Petitioner**: Well, that's what I told them at the time and I --
>
> **Blackwell**: You told them but you didn't get a form from these guys here, these officers [unintelligible] work down here and send it to me.
>
> **Petitioner**: I don't know that. Nobody told me.

Disciplinary Hr'g Audio at 2:04 to 2:52. Officer Blackwell asked Petitioner if he had received a copy of the charge against him. Petitioner answered, "Yes, sir." Id. at 3:27 to 3:30. After Petitioner explained his version of events surrounding the altercation, Officer Blackwell found Petitioner guilty of fighting with another person and sentenced him to seven days in isolation. At a subsequent hearing before the Institutional Classification Authority ("ICA"), Petitioner's Good Time/Earned Sentence Credit earning level was reduced from Class Level I to Class Level II, meaning that, instead of earning 4.5 days of Earned Sentence Credit for every 30 days served in Class Level I, Petitioner was only able to earn 3 days of Earned Sentence Credit for every 30 days served. Accordingly, his projected release date was changed from October 14, 2014 to December 31, 2014. Brown Aff. at 2, ECF No. 19-6.

On March 28, 2011, Petitioner appealed Officer Blackwell's decision to the Warden, claiming that:

(1) the charge he was found guilty of resulted in his being given penalties in excess of what is allowed in D.O.P. 861.1 Offender Discipline, (2) he was denied the right to have an inmate advisor to assist him in preparing for his hearing, having witnesses, and a copy of the video from the dorm, and (3) he was not offered an Informal Resolution Agreement for this being his first charged offense.

Pet'r's Br. at 16, ECF No. 1.  After the Warden upheld the decision, Petitioner appealed to the Regional Director of the VDOC, who also upheld Officer Blackwell's decision.  Id. Petitioner then filed a Petition for Writ of Habeas Corpus in the Supreme Court of Virginia.  That petition was dismissed on November 9, 2011 with a short explanation that "habeas corpus does not lie in this matter and the writ of habeas corpus should not issue as prayed for."  Supreme Court of Virginia Dismissal Order at 1, ECF No. 1-3.

Petitioner filed the instant § 2254 motion on January 19, 2012.  ECF No. 1.  Petitioner alleges that his due process rights were violated because "[t]he procedure used by the Deep Meadow prison administration fell below the minimum requirements of due process."  Id. at 20.  Specifically, Petitioner contends that he did not receive a signed copy of the Disciplinary Offense Report and that his requests for an inmate advisor, witnesses, and documentary evidence were denied.  Id. at 17, 20. Furthermore, because he was immediately transferred from the

6

Deep Meadow Correctional Center to the segregation facility at Powhatan after being served with the charge, Petitioner was unable "to obtain assistance and [the] necessary paperwork to defend himself in the disciplinary hearing." Id. at 20.

Petitioner now asks the Court to "expunge the charge from his prison record, reinstate his good time level, reinstate his original release date to October 14, 2014, and to assess the respondent with any legal expenses incurred by this action." Id. at 21-22. On June 15, 2012, Respondent filed a Rule 5 Answer and Motion to Dismiss, ECF Nos. 17-18, a supporting memorandum, ECF No. 19, and a Roseboro Notice of Motion Pursuant to Local Rule 7(k), ECF No. 20. Petitioner filed his reply brief on July 18, 2012. ECF No. 22.

## II. STANDARD OF REVIEW

This Court conducts a de novo review of any portion of the Magistrate Judge's Report and Recommendation to which specific objections are made. 28 U.S.C. 636(b)(1)(C). "The filing of objections to a magistrate[ judge's] report enables the district judge to focus attention on those issues — factual and legal — that are at the heart of the parties' dispute." Thomas v. Arn, 474 U.S. 140, 147 (1985). "By contrast, in the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is

no clear error on the face of the record in order to accept the recommendation.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee note).   This Court may "accept, reject, or modify" the Magistrate Judge's Report and Recommendation, "in whole or in part," or may "recommit the matter" to the Magistrate Judge with instructions for further consideration. 28 U.S.C. § 636(b)(1)(C).

### III. DISCUSSION

Habeas relief is available to a person in state custody "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."   28 U.S.C. § 2254(a).   Although "the Constitution itself does not guarantee good-time credit for satisfactory behavior while in prison," the State, "having created the right to good time and itself recognizing that its deprivation is a sanction authorized for major misconduct," may not "arbitrarily abrogate[]" the prisoner's liberty interest in that right.   Wolff v. McDonnell, 418 U.S. 539, 557 (1974).   Accordingly, "[w]hen an inmate is subject to prison disciplinary proceedings that result in the deprivation of a protected liberty interest — such as the loss of good time credits — he must be afforded [certain] due process safeguards."   Taylor v. Johnson, No. 1:10cv309, 2011 U.S. Dist.

LEXIS 24829, at *7 (E.D. Va. Mar. 11, 2011) (citing Wolff, 418
U.S. at 563-72). "[T]hose minimum procedures," Wolff, 418 U.S.
at 557, include:

> (1) the right to appear before an impartial decision-
> making body; (2) written notice of the charges in
> advance of the disciplinary hearing; (3) an
> opportunity to call witnesses and present documentary
> evidence, provided the presentation does not threaten
> institutional safety or correctional goals; (4)
> assistance from an inmate representative if the
> charged inmate is illiterate or if complex issues are
> involved; and (5) a written decision by the factfinder
> as to the evidence relied upon and the rationale
> behind the disciplinary action.

Taylor, 2011 U.S. Dist. LEXIS 24829, at *7. A petition for
"equitable relief," including the "restoration of . . . good-
time credits," is properly brought in a habeas petition pursuant
to 28 U.S.C. § 2254, but if "a state prisoner is seeking
damages, he is attacking something other than the fact or length
of his confinement, and he is seeking something other than
immediate or more speedy release - the traditional purpose of
habeas corpus." Preiser v. Rodriguez, 411 U.S. 475, 494 (1973);
see also Wilkinson v. Dotson, 544 U.S. 74, 79 (2005) ("Because
an action for restoration of good-time credits in effect demands
immediate release or a shorter period of detention, it attacks
'the very duration of physical confinement' and thus lies at
'the core of habeas corpus." (internal citations omitted)
(quoting Preiser, 411 U.S. at 487-88)). "Where constitutional

9

infirmities exist, . . . [t]he restoration of good time . . . is an appropriate remedy." Thompson v. Capps, 626 F.2d 389, 392 (5th Cir. 1980).

### A. Petitioner's Objections

Petitioner makes several objections to the Magistrate Judge's Report and Recommendation, which this Court addresses in turn.

### 1. Exhaustion of State Court Remedies

The Magistrate Judge found that Petitioner "exhausted his available state remedies," pursuant to 28 U.S.C. § 2254(b)-(c), regarding his "claims concerning his disciplinary hearing." Report & Recommendation at 4, ECF No. 37. The Magistrate Judge noted, however, that Petitioner appeared to raise new due process claims in his reply brief regarding his ICA hearing, where his good time level was adjusted due to his conviction. See id. Because Petitioner did not raise those claims "before the Supreme Court of Virginia in his earlier habeas petition," the Magistrate Judge found that Petitioner had only exhausted his state remedies as to the "claims concerning his disciplinary hearing." Id.

Petitioner "objects to the Magistrate Judge's analysis of the exhaustion of [his] state court remedies" regarding his ICA hearing. Pet'r's Objections at 1, ECF No. 19. He argues that

10

"both the petitioner and the respondent agree[d] that the petitioner has exhausted his state remedies for all of the petitioner's claims," id. at 1-2 (citing Resp't's Mot. to Dismiss at 2, ECF No. 19), and, in any event, claims that he did, in fact, state his due process claims regarding his ICA hearings in his habeas petition to the Virginia Supreme Court, id. at 2 (citing Pet'r's State Habeas Petition at 4-5).

Before a federal court may consider a writ of habeas corpus presented by a habeas petitioner in state custody, the petitioner must first exhaust all available state court remedies. Longworth v. Ozmint, 377 F.3d 437, 447-48 (4th Cir. 2004) (citing 28 U.S.C. § 2254(b)). To satisfy the state exhaustion requirement, the petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process," which includes "presenting to the state court 'both the operative facts and the controlling legal principles' associated with each claim." Id. at 448 (quoting Baker v. Corcoran, 220 F.3d 276, 289 (4th Cir. 2000)). If the petitioner fails to exhaust his state court remedies, his claim may not be reviewed by the federal court unless he establishes either "cause and prejudice or a fundamental miscarriage of justice." Id. at 447-48. In other words, "[t]he exhaustion

11

doctrine bars a claim if it is raised for the first time in a federal habeas petition." <u>Mickens v. Taylor</u>, 240 F.3d 348, 356 (4th Cir. 2001) (<u>en banc</u>)).

A review of Petitioner's <u>habeas corpus</u> petition submitted to the Supreme Court of Virginia reveals that Petitioner's constitutional claims pertained only to his disciplinary hearing. In the "Jurisdiction" section of his <u>habeas</u> brief, Petitioner asserted that he was "challenging the length of his confinement as a result of the denial of his U.S. Constitutional Right to due process in a <u>disciplinary hearing</u> held in a Virginia Department of Corrections facility." Pet'r's Br. for Writ of Habeas Corpus at 6, ECF No. 19-1 (emphasis added). In his Statement of Facts section, Petitioner alleged that "the respondent did not follow the <u>disciplinary hearing</u> procedures set forth in the [VDOC] Operating Procedure 861.1. In doing so, the petitioner was denied the . . . right to due process in <u>prison disciplinary hearings</u>." <u>Id.</u> at 8 (emphasis added). In his Law and Argument section, Petitioner contended that "The VDOC has procedures to follow during the <u>disciplinary hearing</u> process. <u>These procedures</u> were not followed and caused a loss of liberty interest by the petitioner." <u>Id.</u> at 10 (emphasis added). Petitioner concluded his Virginia Supreme Court <u>habeas</u> brief, stating, "This confirms that the petitioner was denied

his constitutionally protected right created by the VDOC
Disciplinary Hearing Procedure. . . . A total of (77) days have
been added to the petitioner's release date as a result of the
conviction in the disciplinary hearing." Id. at 12 (emphasis
added). Based on Petitioner's submission to the Supreme Court
of Virginia, it appears clear that he asserted claims regarding
only his disciplinary hearing.

Petitioner insists that he asserted claims regarding the
ICA hearing on "pages (4) & (5)" of his habeas brief to the
Supreme Court of Virginia. Pet'r's Objections at 2, ECF No. 40.
However, the only mention of the ICA hearing on those pages
appears on page four of Petitioner's brief, where Petitioner
asserted that "an Institutional Classification Hearing was held"
and that his "good time credit earning level [increased] from
level I to level II based on the conviction of the charge for
fighting." Pet'r's Br. for Writ of Habeas Corpus at 9, ECF No.
19-1. Nowhere in his habeas brief did Petitioner assert any of
the claims he made in his federal court reply brief regarding
the ICA hearing, namely, that he "was not allowed to have
witnesses nor to make a statement on his behalf," that the ICA
hearing was "a denial of the petitioner's 5th Amendment right of
the U.S. Constitution against double jeopardy," and that he was
denied the "Constitutional right to due process in . . .

13

subsequent ICA Hearings." Pet'r's Reply at 4-5, ECF No. 22. Moreover, Petitioner did not "present[] to the state court 'both the operative facts and the controlling legal principles' associated with each claim" concerning the ICA hearings. Longworth, 377 F.3d at 448 (quoting Baker, 220 F.3d at 289). Thus, because the Supreme Court of Virginia was not given the "full opportunity to resolve [Petitioner's] constitutional issues" regarding his ICA hearing, and because Petitioner alleges no "cause and prejudice or a fundamental miscarriage of justice," the Court agrees with the Magistrate Judge that Petitioner did not exhaust his state remedies regarding his "other hearings before the Institutional Classification Authority." Report & Recommendation at 4, ECF No. 37. Petitioner's objection is therefore **OVERRULED**.

### 2. Adjudication "On the Merits"

The Magistrate Judge observed that the "particularly brief" dismissal by the Supreme Court of Virginia of Petitioner's writ of habeas corpus was not "'an adjudication on the merits,'" id. at 5 (quoting Higdon v. Jarvis, No. 7:11-cv-00330, 2012 WL 738731, at *4 (W.D. Va. Mar. 5, 2012)), and thus, "a de novo review standard applies," id.

Petitioner's objection does not appear to assign error to the Magistrate Judge's observations that the dismissal by the

14

Supreme Court of Virginia was not an adjudication "on the merits" and that "a *de novo* review standard applies." Id. Rather, Petitioner contends that the *de novo* review "standard was not followed by the Magistrate Judge," who "arbitrarily ruled" that his "14th Amendment due process rights" were not violated. Pet'r's Objections at 2-3, ECF No. 40. Accordingly, the Court will address the specific findings of the Magistrate Judge to which Petitioner objects. The relevant facts received by the Court after the Magistrate Judge filed his Report and Recommendation, whether from the supplemental evidence filed with the Court or from the evidentiary hearing, will be added as necessary to address each of Petitioner's objections.

### a. Operating Procedure Citation

The Magistrate Judge noted in his Report and Recommendation that one of Petitioner's citations in his § 2254 motion was "incorrect." Report & Recommendation at 6, ECF No. 37. In his § 2254 motion, Petitioner claimed he "was not given copies of the Disciplinary Offense Reports that he signed, as required by D.O.P.(XI),(B),(1)." Pet'r's Br. at 17, ECF No. 1. The Magistrate Judge pointed out that the "correct Operating Procedure section" that "requires the Serving Officer to provide a signed copy of the Disciplinary Offense Report to the offender" is D.O.P.(XI)(B)(7). Regardless of Petitioner's

15

apparent error, however, the Magistrate Judge considered Petitioner's claim, observing that Petitioner "does not allege how he was prejudiced as a result" of not receiving the signed copy. Report & Recommendation at 7, ECF No. 37. Petitioner now objects, stating that he "cited the O.P. correctly [in] his petition for habeas relief to this court," Pet'r's Objections at 3, ECF No. 40.

Upon reviewing both sections of the VDOC Operating Procedure, the Court agrees with the Magistrate Judge's observation. VDOC O.P. 861.1(XI)(B)(7), as noted by the Magistrate Judge, provides, "The Serving Officer shall provide to the offender a signed copy of the Disciplinary Offense Report and the first and second copies of the Penalty Offer." VDOC Operating Procedure at 2, ECF No. 1-5. Section (XI)(B)(1), on the other hand, merely provides that a "Serving Officer" will be "appoint[ed] . . . to serve disciplinary reports on offenders. . . ." Id. at 1. Petitioner's habeas claim was that he did not receive "copies of the Disciplinary Offense Reports that he signed," Pet'r's Br. at 17, ECF No. 1, not that the Serving Officer was improperly "appoint[ed]," VDOC Operating Procedure at 1, ECF No. 1-5. Accordingly, Petitioner's objection is **OVERRULED**.

16

### b. Completion of Disciplinary Offense Report

The Magistrate Judge implied in his Report and Recommendation that Petitioner filled out the Disciplinary Offense Report himself. The Magistrate Judge noted that the questions on the Disciplinary Offense Report were "accompanied by boxes for [Petitioner] to mark." Report & Recommendation at 7, ECF No. 37. He further observed that Petitioner "did not mark the boxes requesting the services of an advisor; he only marked the boxes requesting witnesses and documentary evidence." Id. Petitioner's objection is to "the impression that the petitioner actually received and filled out the Disciplinary Offense Report." Pet'r's Objections at 3, ECF No. 40. Petitioner alleges that the report was read aloud to him by the Serving Officer, who "check[ed] off the responses given by the petitioner onto the boxes on the form." Id. (citing Disciplinary Offense Report, ECF No. 40-3).

It is impossible to tell from viewing the Disciplinary Offense Report whether Petitioner or someone acting on his behalf filled out the form. At the evidentiary hearing before this Court, Petitioner testified that he was in handcuffs when the Disciplinary Offense Report was served on him. He stated that the Serving Officer read the questions to him and marked the form with Petitioner's answers. The Serving Officer

17

confirmed Petitioner's claim, testifying that it was his standard procedure to read the form to the offender and record the offender's answers on the form. Accordingly, based on the supplemental evidence presented at the evidentiary hearing, Petitioner's objection regarding the "impression" that he filled out the report himself is **SUSTAINED**.

### c. Receipt of Copy of Report

The Magistrate Judge indicated in his Report and Recommendation that Petitioner "was served with a copy of Disciplinary Offense Report [on] March 4, 2011, at 2:00 p.m." Report & Recommendation at 7, ECF No. 37. The Magistrate Judge observed that "the Inmate Hearings Officer, in a sworn affidavit," confirmed that "[Petitioner] was served with a copy of the Disciplinary Offense Report." Id. at 6. Petitioner objects, claiming that, although the Disciplinary Offense Report was served on him by the Serving Officer, Petitioner "did not receive a copy of the report at that time" because it "had to be processed first." Pet'r's Objections at 3-4, ECF No. 40.

The Court agrees with the Magistrate Judge's observation. The Disciplinary Offense Report certifies that Petitioner was "provided copy of report" on March 4, 2011 at 2:00 p.m. Disciplinary Offense Report at 1, ECF No. 40-3. Officer Blackwell confirmed in a sworn affidavit that "[o]n March 4,

18

2011, at 2:00 p.m., [Petitioner] was served with a copy of the Disciplinary Offense Report and was advised of his rights during his upcoming disciplinary hearing." Blackwell Aff. at 2, ECF No. 19-3. The audio recording of Petitioner's disciplinary hearing, which the Court obtained after the Magistrate Judge filed his Report and Recommendation, reveals that Petitioner acknowledged receiving a copy of the report. After reading the charge to Petitioner from the Disciplinary Offense Report, Officer Blackwell asked Petitioner, "You did receive a copy of this charge, right?" Petitioner replied, "Yes, sir." See Disciplinary Hr'g Audio at 3:27 to 3:30. Thus, based on the entire record before this Court, including Petitioner's recorded admission that he "receive[d] a copy of this charge," id., the Court finds that Petitioner did receive a copy of the Disciplinary Offense Report. Accordingly, Petitioner's objection is **OVERRULED**.

### d. Prejudice From Not Receiving Copy of Report

Petitioner next objects to the Magistrate Judge's finding that Petitioner "did not allege how he was prejudiced by not receiving a copy of the report." Pet'r's Objections at 4, ECF No. 40. Because the Court finds, as discussed above, that Petitioner did receive a copy of the report, as evidenced by the report itself, Officer Blackwell's sworn affidavit, and

19

Petitioner's own testimony at his disciplinary hearing, Petitioner's objection is **OVERRULED.**

### e. Request for an Advisor

The Magistrate Judge found in his Report and Recommendation that Petitioner "did not mark the boxes requesting the services of an advisor; he only marked the boxes requesting witnesses and documentary evidence." Report & Recommendation at 7, ECF No. 37. The Magistrate Judge also found that, based upon the statements of Officer Blackwell and Facility Unit Head Diggs, Petitioner "'indicated [at the hearing] that he did not wish to have an advisor'" and failed to "move for a continuance" so that he could obtain an advisor. Id. at 8 (quoting Blackwell Aff. at 1, ECF No. 19-3). In addition, the Magistrate Judge found that, by "not mark[ing] the boxes [underneath questions 2 and 3] requesting the services of an advisor," Petitioner "effectively waived his right to an advisor to assist him in preparing [the witness and documentary evidence] forms." Id. at 7.

Petitioner objects, first alleging that the "report clearly shows that the petitioner requested an advisor." Pet'r's Objections at 4, ECF No. 40. Petitioner further objects to the Magistrate Judge's finding that he did not request an advisor or a continuance at the hearing and asserts that "the tape recording from the hearing" would resolve any "doubt to the

20

truth being told by [Officer Blackwell] and the Facility Unit Head." Id. at 5.

When conducting a de novo review of a magistrate judge's findings, which rest, at least in part, on credibility determinations, a district court must make its own credibility determinations, which generally requires more than "'merely . . . reviewing the magistrate[ judge's] report and recommendations.'" Wimmer v. Cook, 774 F.2d 68, 76 (4th Cir. 1985) (quoting United States v. Elsoffer, 644 F.2d 357, 359 (5th Cir. 1981)). Accordingly, determining that additional evidence was necessary to address Petitioner's objection, the Court ordered that the audio recording of the disciplinary hearing be submitted to the Court, ECF No. 42, and that an evidentiary hearing be held to address, among other things, Petitioner's "assertion that he requested assistance from an advisor in obtaining and preparing [documentary evidence and witness] forms." Court's Sept. 25, 2013 Order at 2, ECF No. 52.

Upon review of the Disciplinary Offense Report, the Court finds that Petitioner answered "Yes" to question 1, thereby "request[ing] a staff or offender advisor to assist [him] at the hearing." Disciplinary Offense Report at 1, ECF No. 40-3. It appears that the Magistrate Judge's finding to the contrary derived from his observation that the boxes underneath questions

21

2 and 3, "[r]equest[ing] the services of an advisor" to help specifically with "witnesses" and "documentary evidence," were not checked.  <u>Id.</u>  Indeed, the Magistrate Judge found that, by not checking the appropriate boxes underneath questions 2 and 3, Petitioner had "effectively waived his right to an advisor to assist him <u>in preparing certain forms</u>."  Report & Recommendation at 7, ECF No. 37 (emphasis added).  Nonetheless, as Petitioner asserts in his objection, the "report clearly shows that the petitioner requested an advisor" to assist him <u>at the hearing</u>, in response to question 1 of the Disciplinary Offense Report. Pet'r's Objections at 4, ECF No. 40.

    The Court also finds that Petitioner did not waive his right to an advisor to assist him in preparing the forms by not checking the boxes underneath questions 2 and 3.  At the evidentiary hearing before this Court, Petitioner testified that he answered "Yes" to questions 2 and 3, indicating his requests for witnesses and documentary evidence.  Petitioner testified that he had also indicated that he needed an advisor to help with those forms because he knew he would be in segregation and would be unable to obtain the necessary information himself. Petitioner explained that he was required to provide the names of his witnesses, but that he only knew the bed numbers of the inmate witnesses he wished to call.  Furthermore, Petitioner

22

testified that he also wanted to obtain a statement from the officer who had reported the incident, but did not know that officer's name and, thus, knew he would need the advisor's assistance in getting the reporting officer's statement.

Petitioner acknowledged that, before signing the Disciplinary Offense Report, he noticed that the Serving Officer had not checked the "Request the services of an advisor" boxes underneath questions 2 and 3. Petitioner explained to the Court, however, that he was not concerned because he believed his answer to question 1 would provide him with an advisor to assist him throughout the entire proceeding. Petitioner also explained that this was the first charge he had received during his incarceration at Deep Meadow Correctional Center, and, therefore, he was not familiar with the form.

Captain W.R. Best, the Serving Officer, also testified at the evidentiary hearing. He testified that he could not recall serving the charge on Petitioner specifically, but described the procedure he would typically employ in a case such as Petitioner's. The Serving Officer testified that, if an offender requests an advisor in question 1 of the Disciplinary Offense Report, the Serving Officer would check the "Yes" box next to question 1 and an advisor should be automatically assigned to the offender within 24 to 48 hours of the request.

The Serving Officer acknowledged that the Disciplinary Offense Report indicated Petitioner's request for an advisor and admitted that the failure to provide Petitioner with an advisor – either before or at the hearing - was a violation of the VDOC operating procedures.

The Serving Officer also explained that the boxes below questions 2 and 3, indicating a request for an advisor in relation to witnesses or documentary evidence, would be checked only if the offender requested assistance during the service of the charge. If an offender requested an advisor in response to question 2 or 3, the Serving Officer testified, he would have stopped the service of the charge, called an advisor, and waited for the advisor to arrive to assist the offender before continuing with the rest of the form. Accordingly, based upon the testimony presented at the evidentiary hearing, the Court finds that the failure to provide an advisor to Petitioner was a violation of the VDOC Operating Procedures. This violation was particularly detrimental to Petitioner because of the unusual circumstances surrounding his charge, where he was immediately transferred to Powhatan and held in segregation until his disciplinary hearing. Furthermore, because Petitioner did not know any of his witnesses' names and was unable to locate the witnesses or obtain the reporting officer's statement while he

was in segregation, an advisor was crucial to Petitioner's preparation for the disciplinary hearing in this matter. The Court also finds that it was not necessary for the "advisor" boxes underneath questions 2 and 3 to be checked in order to obtain assistance in filling out the witness and documentary evidence forms because Petitioner's request for an advisor in response to question 1 was sufficient. Accordingly, the Court **SUSTAINS** Petitioner's objection to the Magistrate Judge's finding that he did not request the services of an advisor during the service of the Disciplinary Offense Report.

However, the Court finds that Petitioner did not request an advisor or a continuance at his disciplinary hearing. A review of the audio recording of Petitioner's disciplinary hearing reveals that Petitioner told Officer Blackwell that he "d[id] not wish to have an advisor." Presumably, this was the basis for Facility Unit Head Diggs' and Officer Blackwell's statements that "[Petitioner] indicated that he did not wish to have an advisor," Blackwell Aff. at 2, ECF No. 19-3. At the evidentiary hearing, however, Petitioner claimed that he had an unrecorded conversation with Officer Blackwell before the disciplinary hearing began. Petitioner testified that, upon arriving at his disciplinary hearing, he notified Officer Blackwell that he had not received an advisor or any of the forms he had requested

25

and, thus, was not prepared for the hearing.  According to Petitioner, Officer Blackwell informed him that it was his responsibility to get the forms and turn them in.  Petitioner claimed that he requested a continuance, but that Blackwell refused to grant a continuance.  At that point, Petitioner testified, Blackwell turned on the recorder and began the hearing.  When asked why he did not renew his request for the advisor, forms, and continuance after Officer Blackwell turned on the recorder, Petitioner testified that, because Officer Blackwell had so emphatically denied his requests, Petitioner knew it would have been futile to repeat the requests.  However, the Court finds that the audio recording of the evidentiary hearing fails to support Petitioner's claim, but instead supports Diggs' and Blackwell's statements that Petitioner did not request an advisor or a continuance at the hearing.

Based upon a review of all of the evidence, including Facility Unit Head Diggs' and Officer Blackwell's statements, the audio recording of Petitioner's disciplinary hearing, and the testimony presented at the evidentiary hearing by Petitioner and the Serving Officer, Petitioner's objection to the Magistrate Judge's finding that he did not request an advisor or a continuance at the hearing is **OVERRULED**.

### f. Witness and Documentary Evidence Forms

The Magistrate Judge rejected Petitioner's claim that "[w]itnesses and documentary evidence forms were not made available to him," pursuant to VDOC O.P. 861.1(XI)(B)(2)(b), observing that Petitioner's claim was not supported by the evidence before him. The Magistrate Judge referred to the sworn affidavit of Officer Blackwell, who stated that, "had [Petitioner] made the request for [forms and witness information], staff would have assisted him." Blackwell Aff. ¶ 9, ECF No. 19-3. The Magistrate Judge also noted the letter written by Facility Unit Head Diggs, indicating that, "according to [Petitioner's] testimony," he "did not request any of the above stated forms" at Powhatan. Diggs Memo. at 14, ECF No. 19-1. Petitioner objects, alleging that he "was transferred from the DMCC to PWCC on March 4, 2011" and that neither of the witnesses had "control over the officers at PWCC and the way that they follow policy and procedures." Pet'r's Objections at 5, ECF No. 40. Because Blackwell and Diggs merely "assum[ed] that the procedures were followed" at Powhatan, Petitioner contends that they "attest[ed] to something that they could not confirm as true." Id. Petitioner further objects to the Magistrate Judge's findings that Petitioner did not request witnesses or documentary evidence at his disciplinary hearing.

27

Id. at 5-7.

At the evidentiary hearing, Petitioner testified that the Serving Officer informed him that he would receive the necessary forms to request witnesses and documentary evidence after he was transferred to the segregation facility at Powhatan. Within thirty minutes of being served with the Disciplinary Offense Report, Petitioner was transferred to Powhatan. Once there, Petitioner testified, he asked several times over several days for the forms, but they were never provided to him. At his disciplinary hearing, however, Petitioner did not tell Officer Blackwell that he did not receive the forms to request witnesses or documentary evidence. Instead, when Officer Blackwell stated, "I indicate on the report that you do not wish to have any witnesses, right?," Petitioner answered, "I really don't think I have any." And, when Officer Blackwell stated, "You did not request any documentary evidence, right?," Petitioner answered, "Yeah, the uh . . . I requested the video. The video." Thus, it appears that Petitioner likely received the forms, but failed to submit them. Of course, the Court observes that, without the assistance of an advisor, it would have been impossible to submit a form to request witnesses, as Petitioner did not know any names of the inmates who he wished to request. Furthermore, even if Petitioner had submitted a request for the

28

video tape, his request would have been denied "due to security concerns." Blackwell Aff. at ¶ 9, ECF No. 19-3.[2] Accordingly, Petitioner's objection regarding whether he received the forms to request witnesses and documentary evidence is **OVERRULED**.

### g. Disposition of Outstanding Motions

Petitioner objects to the Magistrate Judge's rulings on his "Motion to Strike, Motion for the Respondent to Produce Documentation Showing the Sequence of the Sentences Being Served by the Petitioner, and Motion for Injunctive Relief." ECF No. 40 at 8.[3] The Court addresses Petitioner's objections to each motion in turn.

#### (i) Motion to Strike

Petitioner filed a Motion to Strike Officer Blackwell's sworn affidavit, which Petitioner claims contained two false statements: (1) that Petitioner did not submit the forms to request the video tape or to have the reporting officer present

---

[2] Petitioner cites VDOC Operating Procedure 861.1(XV)(c)(7), effective September 11, 2011, which authorizes an inmate hearing officer to review video evidence requested by an offender and to summarize the relevant observations for the record. The Operating Procedure clearly says, however, that "the need to review such recordings or evidence is determined by the IHO." Pet'r's Objections at 7, ECF No. 40. Furthermore, this "updated" Operating Procedure is dated after both Petitioner's offense and hearing date and Petitioner cites no such procedure in place at the relevant time.

[3] Because Petitioner's motions are "not dispositive of [Petitioner's] claim," this Court reviews the Magistrate Judge's recommendations for clear error. Fed. R. Civ. P. 72(a).

at the hearing, and (2) that "[Petitioner] was informed of his right to appeal [Officer Blackwell's] decision to the Warden and [Petitioner] indicated that he did not wish to appeal, and would take [Blackwell's] decision." ECF No. 31. No evidence in the record indicates clear error by the Magistrate Judge in denying Petitioner's motion to strike the affidavit. As discussed above, it appears that Petitioner likely received the appropriate forms, but failed to submit them, presumably because he had no assistance from the advisor to get the names of the witnesses and the reporting officer while he was in segregation. Furthermore, the audio recording of the disciplinary hearing indicates that Officer Blackwell did advise Petitioner of his right to appeal and asked Petitioner if he intended to do so. Petitioner replied, "Nah, I'll take you, I'll take your decision." Disciplinary Hr'g Audio at 6:34 to 6:37. Not only does the audio recording confirm Officer Blackwell's statement that Petitioner was informed of his right to appeal, it appears to the Court that Petitioner waived such right when he indicated that, rather than appeal, he would "take [Officer Blackwell's] decision." Id. Accordingly, finding no clear error in the Magistrate Judge's ruling on Petitioner's motion to strike, the Court **OVERRULES** Petitioner's objection.

### (ii) Motion for Injunctive Relief

Petitioner filed a Motion for a Preliminary Injunction and Temporary Restraining Order based on "the problem he is having with his access to court." Pet'r's Mot. for Prelim. Inj. at 1, ECF No. 15. Specifically, Petitioner complained that he had "just been informed . . . that he will <u>not</u> be allowed to have any legal copies made without a court order." Id. Petitioner asserted that the updated VDOC Operating Procedures had imposed "a $50 limit for legal copies," and claimed that, because he "ha[d] not made $50 worth of copies [he was] being denied access to the courts by the facility refusing to make the necessary copies." Id. The Magistrate Judge denied Petitioner's motion, observing that, "based on the number of filings the Petitioner has made in this Court it does not appear he is being denied access to the Court." Oct. 25, 2012 Order at 2, ECF No. 29. Petitioner filed a timely objection to the Magistrate Judge's ruling. ECF No. 30. In his Report and Recommendation, the Magistrate Judge affirmed his ruling on Petitioner's motions on the same grounds. Report & Recommendation at 11, ECF No. 37. Petitioner now objects, asserting that his objections should have been reviewed by the District Court Judge, as required by Fed. R. Civ. P. 72. Pet'r's Objections at 9, ECF No. 40.

Pursuant to Rule 3(a) of the Rules Governing Section 2254

31

Proceedings for the United States District Courts, a petitioner must file with the clerk "[a]n original and two copies of the motion." However, it is not necessary that the petitioner submit photocopies of the original. <u>Ladeairous v. Pearson</u>, No. 3:12CV307, 2013 U.S. Dist. LEXIS 159198, at *6 (E.D. Va. Nov. 6, 2013) (observing that "handwritten or typed copies of the petition are acceptable" (citing <u>Price v. Reid</u>, 161 F. App'x 773, 776 (10th Cir. 2006))). Accordingly, because Petitioner "fails to demonstrate that the prison's photocopying policy prevented him from filing a § 2254 Petition or otherwise denied him reasonable access to the Court," <u>id.</u>, Petitioner's motion is **DENIED**.

### (iii) Motion to Produce Documentation Regarding Sentence Sequence

Petitioner filed a Motion for the Respondent to Produce Documentation Showing the Sequence of Sentences Being Served by the Petitioner. ECF No. 33. Petitioner specifically requested information regarding "the order upon which the Virginia Department of Corrections is calculating his sentence." <u>Id.</u> at 1. The Magistrate Judge denied the motion, based upon his recommendation that Petitioner's § 2254 motion be denied. Because this Court granted the § 2254 motion, the instant motion is ripe for review.

Petitioner's request is not appropriately before this Court. As Respondent notes in his opposition, "'A *habeas* petitioner, unlike the usual civil litigant in federal court, is not entitled to discovery as a matter of ordinary course.'" Resp't's Br. in Opp. at 2, ECF No. 34 (quoting <u>Bracy v. Gramley</u>, 520 U.S. 899, 904 (1997)). In order for a habeas petitioner to be granted discovery, the petitioner must show "good cause" and must "provide reasons for [his] request." Rule 6(a) of the Rules Governing Section 2254 Cases in the United States District Courts. Petitioner's desire for "a clear understanding of how the VDOC is calculating his time," Pet'r's Motion for the Respondent to Produce Documentation Showing the Sequence of Sentences Being Served by the Petitioner at 1, ECF No. 33, is not a valid reason to grant his motion for such calculation information because it has no bearing on this Court's decision to grant his § 2254 motion and Petitioner does not indicate otherwise. Furthermore, Petitioner has in his possession, and has submitted to the Court, copies of his projected release date calculations, showing how his projected release date changed after his institutional conviction. All other information Petitioner requests, such as "the method upon which [VDOC] calculate[s] sentences" and "whether or not any of the sentences that have been given to [Petitioner] to serve have been

33

completed," id., are not a matter for this Court to address. Indeed, "the decision regarding the optimal sequence in which an inmate should serve his multiple state sentences is precisely the type of state prerogative with which a federal court may not meddle." Barr v. Virginia, No. 7:10-cv-485, 2011 U.S. Dist. LEXIS 72347, at *8 (W.D. Va. July 6, 2011) (citing Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Lenz v. Washington, 444 F.3d 295, 304-05 (4th Cir. 2006)). Accordingly, Petitioner's objection is **OVERRULED**.

## IV. CONCLUSION

After reviewing the record, Petitioner's objections, Respondent's response to Petitioner's objections, and having made de novo findings with respect to the portions to which Petitioner objected, the Court **ADOPTS, IN PART**, and **REJECTS, IN PART**, the Magistrate Judge's Report and Recommendation filed on February 27, 2013, ECF No. 37. The Court also **DENIES** Petitioner's motion for a preliminary injunction and temporary restraining order and **OVERRULES** Petitioner's objections to the Magistrate Judge's denial of his remaining outstanding motions. Accordingly, the Court **ORDERS** that Respondent's Motion to Dismiss, ECF No. 18, be **DENIED** and Petitioner's § 2254 Petition, ECF No. 1, be **GRANTED** for the reasons stated in the Report and Recommendation and further **ORDERS** judgment be entered in

Petitioner's favor.   Specifically with respect to the disciplinary action addressed here, the Court **ORDERS** the reinstatement of Petitioner's good time/earned sentence credit earning level from Level II to Level I and that Petitioner's projected release date be adjusted accordingly.[4]

The Clerk is **DIRECTED** to forward a copy of this Order to the Petitioner, his counsel who represented him at the evidentiary hearing, and counsel of record for the Respondent.

It is so **ORDERED**.

/s/ Mark S. Davis
Mark S. Davis
United States District Judge

Norfolk, Virginia
March 10 , 2014

---

[4] The Court acknowledges that Petitioner has since received an additional institutional charge, resulting in a change of his good time/earned sentence credit earning level from Level II to Level III. See Case No. 2:12cv210.   Therefore, Petitioner's good time/earned sentence credit earning level and projected release date resulting from that charge should also be adjusted accordingly.